UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CHRISTOPHER ADAMS, BRUCE
SMILEY, WARREN DAVIS, JAMES
SPANN, GARY SEELEY, CHAD BELL,
ROY RODGERS, JOHN SAULSBERRY,
JOSEPH OVERMAN, RICHARD
CALFEE, RONALD HAYES, BARRY
WADDELL, and CARLOS AGUILAR,

    Plaintiffs,

v.      No.: 1:19-CV-296-HSM-SKL

TONY PARKER and LEE DODSON,

    Defendants.

## MEMORANDUM OPINION

Plaintiffs, who are all prisoners of the Tennessee Department of Correction ("TDOC") currently housed in the Bledsoe County Correctional Complex, have filed a "verified class action complaint for declaratory and injunctive relief" against Defendants arising out of a TDOC policy that requires all inmates to wear plastic color-coded wristbands with a "metal dual grip fastener" to prevent inmates from entering parts of the jail facility that they are not authorized to enter [Doc. 1], a motion to appoint counsel [Doc. 2], and a motion to certify class [Doc. 3]. Plaintiffs have paid the filing fee [Doc. 1 (docket entry)]. The Court will address Plaintiffs' motions before screening the complaint.

### I. MOTION TO APPOINT COUNSEL

First, as to Plaintiffs' motion to appoint counsel, appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F. 2d 601, 605–6 (6th Cir. 1993). A district court has discretion to

determine whether to appoint counsel for an indigent plaintiff. *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992). In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims. *Lavado*, 992 F.2d at 605–6.

As to the first and second factors, this is a non-complex § 1983 case arising out of a TDOC policy requiring inmates to wear plastic wristbands. As to the third factor, it is apparent from their filings that Plaintiffs are capable of adequately presenting their legal arguments. Thus, after considering the relevant factors, the Court finds that Plaintiffs are not entitled to appointment of counsel. Accordingly, Plaintiffs' motion to appoint counsel [*Id.*] will be **DENIED**.

## II. MOTION TO CERTIFY CLASS

Plaintiffs have also filed a motion to certify this lawsuit as a class action [Doc. 3]. For a case to proceed as a class action, the Court must be satisfied that the class has adequate class representation, among other things. *See* Fed. R. Civ. P. 23(a)(4). It is well established, however, that pro se litigants are inappropriate representatives of the interests of others. *See Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (holding that "non-attorneys proceeding pro se cannot adequately represent a class"); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001) (holding that "pro se prisoners are not able to represent fairly the class"). As the Court has determined above that Plaintiffs are not entitled to appointment of counsel in this case, the Court will likewise **DENY** Plaintiffs' motion for class certification [*Id.*].

## III. SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious,

fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983; *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).

### B. Analysis

In their complaint, Plaintiffs allege that TDOC has implemented a policy under which every inmate must wear a colored wristband fitted snugly to his wrist for security purposes which violates their Eighth Amendment right to be free from cruel and unusual punishment because it exposes them to foodborne illnesses, places them in imminent danger of contracting bacterial and viral infections, causes abrasions and puts them at risk of inflicting abrasions on others, and puts inmates working certain jobs at risk of physical injury as a result of the wristband snagging on machinery and/or carrying an electronic charge through the metal clasp [Doc. 1 p. 11–44].

The Eighth Amendment limits the power of the states to punish those convicted of crimes. Specifically, the Eighth Amendment requires that a state's punishment of prisoners may not be "barbarous" or contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). Accordingly, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).

However, "the Constitution does not mandate comfortable prisons," *Rhodes,* 452 U.S. at 349, and "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Thus, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities'" will establish that a prisoner's conditions of confinement violate the Eighth Amendment. *Id.* at 8–9 (1992) (citations and quotations omitted).

Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Accordingly, in examining claims alleging that the conditions of the plaintiff's confinement violate the Eighth Amendment, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36; *see also Rhodes*, 452 U.S. at 347.

Plaintiffs have failed to set forth a plausible claim that the TDOC policy requiring inmates to wear wristbands violates the Eighth Amendment. First, Plaintiffs set forth graphic and detailed descriptions of how bathroom waste, other bodily fluids, and/or germs and other harmful materials may come into contact with the wristbands and assert that the wristbands cannot be completely washed due to their snugness [Doc. 1 p. 15]. The Court notes, however, that Plaintiffs assert that the wristbands are plastic, which is fairly easy to clean. It also notes that Plaintiffs admit that the wristbands do have some level of movement on their wrists, and that very little space would be needed for soap and water to reach the underside of such a plastic wristband.

Even accepting Plaintiffs' allegations that the wristbands cannot be fully washed underneath and therefore pose some risk of passing on foodborne pathogens, germs, or other illnesses, however, nothing in the complaint allows the Court to plausibly infer that any such risk is so grave that it violates society's contemporary standards of decency. All persons who consume food or drink that they have not personally handled from "farm to table," whether the food or drink is served in a prison, at a festival, at a restaurant, or in someone else's house, assume the risk that a person who prepared that food may have had an illness, worn a wristband or other jewelry that was not properly washed, not washed their hands after their last trip to the bathroom, or otherwise exposed the food or drink to foodborne pathogens, germs, or illness. Entities such as prisons and restaurants may minimize this risk by requiring food preparers to wear gloves, masks, or other protective items, but the risk cannot be eliminated, and society must therefore tolerate it. Accordingly, Plaintiffs have not set forth facts from which the Court can plausibly infer that the TDOC policy requiring wristbands for inmates creates an extreme deprivation that violates the Eighth Amendment. Moreover, to the extent Plaintiffs seek to hold Defendants liable under § 1983 because the policy violates other state policies or regulations, such allegations fail to state a

claim upon which relief may be granted under § 1983, which does not provide redress for violations of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Likewise, Plaintiffs have not established that the wristbands create a risk of physical injury that is so grave that it violates contemporary standards of decency based upon the allegations that the wristbands have caused inmates and persons with whom inmates interact to incur abrasions, as a vast number of products that all individuals, incarcerated or not, use every day also carry a risk of abrasions. For example, paper can cause abrasions through paper cuts, but society has chosen to tolerate this risk and continue to use it. Thus, the complaint does not allow the Court to plausibly infer that the risk of abrasions due to the wristbands violates the Eighth Amendment.

Further, while Plaintiffs allege that other inmate class members who work certain jobs may be exposed to a higher risk of injury due to wearing the wristbands because of their proximity to live electrical circuits and/or machinery that could snag the wristband, the Court has declined to certify this lawsuit as a class action, and nothing in the complaint allows the Court to plausibly infer that any Plaintiff is exposed to such a risk [Doc. 2 p. 33–36]. As Plaintiffs lack standing to assert the constitutional rights of other prisoners, *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989), the Court will not address whether these assertions state a claim upon which relief may be granted under § 1983.

**IV.    CONCLUSION**

For the reasons set forth above:

1. Plaintiffs' motions to appoint counsel [Doc. 2] and to certify class [Doc. 3] are **DENIED**;

2. Even liberally construing the complaint in favor of Plaintiffs, it fails to state a claim upon which relief may be granted under § 1983;

3. Accordingly, this action will therefore be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; and

4. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**E N T E R :**

　　　　　　　　　　　　　　　　　　*/s/ Harry S. Mattice, Jr.*
　　　　　　　　　　　　　　　　　　HARRY S. MATTICE, JR.
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE